### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **BENJAMIN GUY BEHEL,** | ) | |
| **DAVID EUGENE WALLACE, and** | ) | |
| **JOYE D. WALLACE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:21-cv-0035-SNLJ** |
| | ) | |
| **BERNEY P. WESCOTT,** | ) | |
| **HERITAGE TRANSPORT, LLC,** | ) | |
| **BOBBY LYNN JAMES, and** | ) | |
| **TRACY LONNY REYNOLDS** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM and ORDER

This matter is before the Court on two motions to exclude portions of the opinions and testimony of plaintiffs' expert William Hampton. [Docs. 86, 88.] The motions have been fully briefed and are ripe for disposition.

Plaintiffs filed this lawsuit against defendants for damages allegedly sustained in a motor vehicle accident on Interstate 55 in Scott County, Missouri. Plaintiff Behel was traveling southbound in the right lane in a truck with an attached trailer. Defendant Wescott was driving a semi-tractor trailer in the same lane behind Behel. Defendant James was driving in the same lane behind Wescott. At some point, Wescott's vehicle struck the rear of Behel's trailer. James then veered into the left lane. Wescott's vehicle then jackknifed, which caused Wescott's trailer to swing into the left lane. James's vehicle then collided with Wescott's trailer, which forced James's vehicle into the

1

median.  James's vehicle then collided with Behel's vehicle, which had traveled into the median after being struck by Wescott's vehicle.

Plaintiffs designated William Hampton as an expert witness to analyze the accident.  Mr. Hampton prepared a report at plaintiffs' request, and his report contained information and conclusions to which the defendants variously object.

This Court must act as a "gatekeeper" to "insure that proffered expert testimony is both relevant and reliable." *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006) (quoting *Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003)); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).  Federal Rule of Evidence 702 governs the standard for this Court's admission of expert testimony.  It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Additionally, "if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the [fact-finder], it must be excluded." *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1014 (8th Cir. 2012) (quoting *Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 416 (8th Cir. 2005)).  Finally, "[e]ven if expert testimony meets the requirements of Federal Rule of Evidence 702, the district court may exclude it if 'its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

needlessly presenting cumulative evidence.'" *United States v. Watkins*, 66 F.4th 1179, 1184–85 (8th Cir. 2023) (quoting Fed. R. Evid. 403) (citing *United States v. Strong*, 826 F.3d 1109, 1115 (8th Cir. 2016)).

The aforementioned motions contend that four of Mr. Hampton's opinions, as well as a crash reconstruction animation he reviewed, fail to meet these standards and thus should be excluded from his testimony.  These are examined in turn below.

**A.    Opinion Number 6**

In the section of his report titled "Final Conclusions," Mr. Hampton provides the following opinion, labeled Number 6:

> Berney Wescott operated his vehicle as a distracted driver, due to playing a college football game on his phone, and looking to the rear of his vehicle longer than he should have.  He turned his attention away from the view ahead of him as he approached the Behel vehicle closely.

[Doc. 89-2 at 17.]

Defendants Wescott and Heritage Transport, LLC (Heritage) contend that this opinion should be excluded because it "lacks sufficient factual foundation and is based purely on Mr. Hampton's speculation." [Doc. 89 at 4.]  Specifically, these defendants argue that there is insufficient evidence for Mr. Hampton to ultimately conclude that Wescott's listening to a football game on his cell phone caused or contributed to the cause of the crash. *See* [Doc. 89-2 at 4, 6.]  Reference to Mr. Hampton's deposition is instructive here:

> **Q.** Okay.  So what significance does listening to the college football game have here?
>
> **A.** *It is just a combination of everything he has got going on*.

**Q.** Okay.  So do you have a specific opinion that Mr. Wescott listening to the football game through his Bluetooth headset contributed to cause this accident?

**A.** No.  What I am saying is that ***that is one of several things that he is doing***.  Yeah.  He is listening.  So he is taking in some information.  Then he is looking into his mirrors and then he is looking further than he should have.  And he is also closer to the Behel vehicle than he must have been even before he starts all of this, looking into his mirrors and things.

**Q.** Okay.  Specific to listening to the football game is my question.  Do you have any opinions that Mr. Wescott listening to the football game caused or contributed to cause this motor vehicle accident?

**A.** No. I can't say that specifically.

[Doc. 89-3 at 11–12 (emphases added).]

It is clear from a plain reading of Mr. Hampton's Opinion Number 6 and by reference to his deposition that his conclusion that Wescott was operating as a distracted driver was due to the totality of circumstances, and not one individual factor (e.g., listening to the football game) alone.  However, it appears that defendants are objecting on the basis of a conclusion that Wescott was a distracted driver *simply* because he was listening to a college football game.  But that is a conclusion that Mr. Hampton never made in the first place.  Their argument thus fails, and their request to exclude this portion of Mr. Hampton's opinion is therefore denied.

**B.    Opinion Number 12**

In the section of his report titled "Final Conclusions," Mr. Hampton provides the following opinion, labeled Number 12: "Bobby James was following the Wescott vehicle too closely, and violated the standards of the Commercial Motor Vehicle Driver Manual and industry standards and did not have the time and distance to avoid the Wescott and Behel vehicles." [Doc. 87-1 at 17.]  Defendants James and Reynolds contend that this

conclusion should be excluded because it is not based on sufficient facts. *See* [Doc. 87 at 4, 6.]

The defendants ultimately reduce their argument down to the simple proposition that if the Wescott trailer had not jackknifed, there would have been no collision.  Mr. Hampton tacitly agrees, as is seem from the following excerpt from his deposition:

> **Q.** So Bobby James when given two options to avoid this collision, to avoid a rear-end collision, can either apply his brakes, try to sudden stop or can move in the left lane, and he does one of the two of those?
>
> **A.** Yes.
> …
> **Q.** If Mr. Wescott's trailer had not swung into the left lane would there have been an impact between Bobby James' truck and the Wescott trailer?
>
> **A.** I say possibly not.
>
> **Q.** You can't rule that out, can you?
>
> **A.** No.
>
> **Q.** You can't say within any reasonable degree of accident reconstruction certainty whether or not Mr. James would have avoided this collision if he had just, if the Wescott trailer had not gone in the left lane?
>
> **A.** At the moment that is true.

[Doc. 87-2 at 49.]

Plaintiffs, on the contrary, contend that the "true issue" of the case is "whether the James vehicle was following too closely to the Wescott vehicle prior to the events which injured Plaintiffs." [Doc. 110 at 2.]  Plaintiffs argue that had James been following Wescott at an appropriate distance, "[t]his would have been sufficient for [James] to come to a stop or take evasive maneuver, and thereby avoid the collision with the

Wescott tanker." [Doc. 110 at 2 (citing [Doc. 87-1 at 15]).]  To this end plaintiffs refer to Mr. Hampton's report, in which he states:

> Instead of following the Behel vehicle at four seconds, [James] should have been a minimum of seven seconds or at their speed a distance of 735 feet at 72 miles per hour.  If James would have been following the Wescott vehicle at a safe distance, he could have avoided this crash.  He could have brought his vehicle to a complete stop in 514 feet.

[Doc. 87-1 at 15.]

Plaintiffs and Mr. Hampton seem to either be arguing that (1) James ought to have been following Wescott at a greater distance when James was in the right lane to avoid rear-ending the Wescott trailer, or (2) James ought to have been "following" Wescott at a greater distance even while in the left lane to avoid colliding with the jackknifed Wescott trailer.  If their contention is the former, this fails because James *did* avoid colliding with Wescott when he successfully maneuvered into the left lane.  Only *after* he had moved into the left lane did Wescott's vehicle jackknife and the two collide.  This fact is shown definitively in Mr. Hampton's deposition:

> **Q.** Which lane did the collision between the front of Mr. James' truck and the rear of Wescott's trailer, which lane did that happen it [sic]?
>
> **A.** It appears to happen in the left or right towards the center of the two lanes.
>
> **Q.** But in the left lane?
>
> **A.** Yes.

[Doc. 87-2 at 49.]  It is thus nonsensical to assert that James needed more following distance to veer into the left lane to avoid rear-ending the Wescott trailer, because James did so.

If, instead, their contention is the latter, that argument similarly makes little sense. The requirement to have a sufficient distance between oneself and another vehicle is in the context of *following* a vehicle.  But the moment James maneuvered into the left lane, he was not "following" Wescott at all; James was in the left lane, and Behel and Wescott were in the right lane.  Plaintiffs and Mr. Hampton would then be proposing a standard in which James, after having moved into the left lane, *still* had an obligation to remain a sufficiently great distance behind the Wescott and Behel vehicles, even though those vehicles were not in his lane.  Under such a framework, *any* vehicle that happened to be fewer than 514 feet behind the Wescott or Behel vehicles *in either lane* would be a violator, even a vehicle that had never been in the right lane to begin with, or a vehicle lawfully attempting to pass.  Such scenarios run afoul of both what is legally permitted when driving as well as common sense.  This Court cannot fault James for driving in a lane in which he had every right to drive.  Consequently, the Court is unconvinced by Mr. Hampton's conclusion that James was following the Wescott and Behel vehicles too closely.

Moreover, Mr. Hampton's conclusion is unsupported and misleading because a rational listener would deduce from it that James's following distance was a but-for cause of his crash into the Wescott trailer.  But, as noted above, James did not strike Wescott's trailer because of his following distance; rather, he struck Wescott's trailer because he was in the left lane at the time Wescott's vehicle jackknifed.  The Court is also particularly persuaded by the following analysis from defendants' briefing:

> Mr. James successfully made a lane change to the left lane and was
> therefore in no different position than if he had been driving in the left lane
> the whole time.  Mr. Hampton should not be allowed to testify that because
> he was in the right lane instead of the left lane, that he was following too
> closely.  Either way, Mr. James would have been in the left lane when

Wescott trailer jackknifed and struck his semi.

[Doc. 87 at 7.]

In light of the foregoing, the Court finds that Mr. Hampton's conclusion that "Bobby James was following the Wescott vehicle too closely…and did not have the time and distance to avoid the Wescott and Behel vehicles" "is so fundamentally unsupported that it can offer no assistance to the [fact-finder]." *David E. Watson, P.C.*, 668 F.3d at 1014, and that the probative value of such conclusion is "substantially outweighed by a danger of…misleading the jury," Fed. R. Evid. 403. Consequently, the Court grants defendants' request to exclude this portion of Mr. Hampton's testimony.

**C.    Opinion Number 13**

In the section of his report titled "Final Conclusions," Mr. Hampton provides the following opinion, labeled Number 13: "The FMCSA's Guide to Improving Highway Safety illustrates the unsafe actions of Berney Wescott, and Bobby James contributed to the causation of this crash, and defined the crash as preventable." [Doc. 87-1 at 17.]

Defendants Wescott and Heritage contend that this opinion should be excluded on the basis of the phrase "contributed to the causation of this crash." *See* [Doc. 89 at 6.] James and Reynolds take issue with Mr. Hampton's other conclusion that the FMCSA's Guide to Improving Highway Safety (the Guide) "defined the crash as preventable." *See* [Doc. 87 at 8–10.] The Court will review each of these clauses in turn.

**1.    "[C]ontributed to the causation of this crash"**

Defendants Wescott and Heritage contend that this portion of Mr. Hampton's testimony should be excluded because it constitutes an impermissible legal conclusion. *See* [Doc. 89 at 6.] These defendants are correct that it is outside the province of expert witnesses to decide questions of law. *See Peterson v. City of Plymouth*, 60 F.3d 469, 475

(8th Cir. 1995) (stating that it was an abuse of discretion to allow expert testimony that "was not a fact-based opinion, but a statement of legal conclusion" because "[t]he legal conclusions were for the court to make"); *see also Rollins v. Smith*, 106 Fed.Appx. 513, 514 (8th Cir. 2004) (holding that a "statement of legal conclusion by [a] purported expert was properly excluded"). However, "[e]xpert testimony is admissible if it is reliable and will help the jury understand the evidence or decide a fact in issue," *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1060 (8th Cir. 2002) (citing Fed. R. Evid. 702), and "[a]n opinion is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a). The standard elucidated by the Eighth Circuit is that a trial court may exclude expert testimony "*only if* 'it is so fundamentally unsupported that it can offer no assistance to the jury.'" *Archer Daniels Midland Co. v. Aon Risk Servs.*, 356 F.3d 850, 858 (8th Cir. 2004) (emphasis added) (quoting *Bonner v. Isp Techs.*, 259 F.3d 924, 929–30 (8th Cir. 2001)). That high bar is not met here. Mr. Hampton's report makes clear that his opinion is indeed "fact-based." *Peterson*, 60 F.3d at 475. That is to say, his report as a whole shows he reached his conclusion on "causation" in the context of evaluating the facts of the case as he sees them, and his opinion is not a mere "statement of legal conclusion." *Id.* His opinion is not "so fundamentally unsupported that it can offer no assistance to the jury." *Bonner*, 259 F.3d at 929–30. It thus does not qualify as an improper legal conclusion, and defendants' request to exclude this portion of Mr. Hampton's testimony is consequently denied.

## 2. "[D]efined the crash as preventable"

Defendants James and Reynolds contend that this portion of Mr. Hampton's testimony should be excluded with respect to James because Mr. Hampton fails to

adequately connect his conclusion to James's conduct.  Plaintiffs do not contest this in their briefing.

In his report, Mr. Hampton noted that the FMCSA's Guide identifies an accident in which one vehicle strikes another vehicle in the rear as preventable if a driver failed to "maintain safe following distance and have his/her vehicle under control…keep track of traffic conditions and did not slow down…[or] ascertain whether [the] vehicle ahead was moving slowly, stopped, or slowing down for any reason." [Doc. 87-1 at 14.] Immediately after listing these criteria in his report, Mr. Hampton concluded that "Wescott failed to follow these safe operating procedures, which were the causation of this crash." *Id.*  James's name is conspicuously absent from Mr. Hampton's discussion of preventability, and nowhere in his report or his deposition does Mr. Hampton conclude that James also failed to follow these safe operating procedures.  And as the defendants aptly point out: "Mr. Hampton did not state that Mr. James failed to 'follow these safe operating procedures' in his report, nor make any effort to explain how Mr. James might have failed to do so.  Rather, in his summary of opinions, he includes Mr. James's name with no further explanation." [Doc. 87 at 8.]

Moreover, any conclusion that James could have prevented this accident is inaccurate, because—as noted above—Mr. Hampton admitted in his deposition that he cannot rule out the possibility that James would not have struck the Wescott vehicle had the Wescott vehicle not jackknifed.

Because there is no legitimate justification for the conclusion that this crash was preventable by virtue of James's actions, the Court will exclude this portion of Mr. Hampton's testimony as it relates to James.

### D.    Opinion Number 11

In the section of his report titled "Final Conclusions," Mr. Hampton provides the following opinion, labeled Number 11: "Berney Wescott violated several regulations and statutes from the Federal Motor Carrier Safety Regulations and the State of Missouri, which led to the causation of this crash." [Doc. 89-2 at 17.]

Defendants Heritage and Wescott contend that this opinion should be excluded for the same reasons they contest Mr. Hampton's Opinion Number 13: namely, the usage of the word "causation." Their argument fails for the same reasons elucidated in section C-1 of this memorandum, and their request to exclude Mr. Hampton's Opinion Number 11 is, for the same reasons, denied.

### E.    Animation Exhibit

In preparing his report, Mr. Hampton relied on a computer animation of the crash prepared by DKG Global, Inc. *See* [Doc. 89-2 at 4.] According to defendants Wescott and Heritage, "[t]he animation depicts the accident sequence, and also includes 'what if' scenarios that purport to show what should/could have happened if the circumstances of the accident were different." [Doc. 89 at 8.] These defendants believe that Mr. Hampton will attempt to use this animation as a demonstrative aid at trial. *See id.* They argue that Mr. Hampton should be precluded from using the animation as a demonstrative aid at trial for several reasons, including concerns about a lack of foundation and the lack of Mr. Hampton's personal involvement in the creation of the animation. *See id.* at 8–12.

Defendants' concerns may or may not be well-founded, but their request is premature. Plaintiffs themselves have noted that "[t]he use or not of the animation has not been determined for trial." [Doc. 100 at 14.] If, in the future, it becomes clear that plaintiffs intend to either introduce this animation into evidence or utilize it as a

demonstrative aid to be witnessed by the trier of fact, defendants may renew their objection to the animation.  But until then, the objection is premature, and the Court will not at this time grant defendants' motion to exclude on this ground.

Accordingly,

IT IS HEREBY ORDERED that the motion [Doc. 86] submitted by defendants Bobby Lynn James and Tracy Lonny Reynolds to exclude opinions and testimony of plaintiffs' expert William Hampton is GRANTED.

IT IS FURTHER ORDERED that the motion *in limine* [Doc. 88] submitted by defendants Heritage Transport, LLC and Berney P. Wescott to limit the testimony of plaintiffs' expert William Hampton is DENIED.

Dated this 21st day of December, 2023.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE