UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN GUY BEHEL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:  1:21-cv-00035-SNLJ |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| BERNEY P. WESCOTT and | ) | |
| HERITAGE TRANSPORT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION IN LIMINE NOS. 1-20

Defendants Berney P. Wescott and Heritage Transport, LLC, for their Motions in Limine Nos. 1-20, state as follows:

**Defendants' Motion in Limine No. 1: "Reptile", "Personal Safety" and "Community Safety"**

1.      It is anticipated that Plaintiff's counsel will in *voir dire* and then throughout the course of the trial argue to the empaneled jurors that they have the power to improve the safety of themselves, their family members and their community by rendering a verdict that will reduce or eliminate "dangerous" conduct, such as that alleged against Defendants. This trial tactic is being taught in plaintiff's trial advocacy courses and is based on a book by David Ball and Don Keenan entitled "Reptile: The 2009 Manual of the Plaintiff's Revolution."

2.      The thesis of the "Reptile" is that jurors, like all humankind, have brains consisting of three parts which includes the reptilian complex. The reptilian complex, also known as the reptilian brain, includes the brain stem and the cerebellum which control our basic life functions such as breathing, hunger, and survival, and instinctively the reptilian brain overpowers the cognitive and emotional parts of the brain when those life functions become threatened. *Id*. at 17.

Mr. Ball and Mr. Keenan posit that "[w]hen the Reptile sees a survival danger, even a small one, she protects her genes by impelling the juror to protect himself and the community." *Id*. at 17, 19, 73. The authors suggest that reducing danger in the community facilitates survival, which awakens the reptilian part of the brain in each juror and overcomes logic or emotion. *Id*. at 46. The authors further suggest that plaintiff's lawyers must appeal to the jurors' own sense of self-protection in order to persuade and prevail. According to Mr. Ball and Mr. Keenan, appealing to a juror's self-protective interests will reverberate and convince better than any other argument. Because the most powerful thinking occurs when one is protecting one's life, a lawyer can communicate most effectively by converting every issue into one of self-protection or its cousin, community safety. By linking each argument in some way to a juror's sense of personal or community safety, this plaintiff's strategy gives jurors a compelling reason to rule in favor of a plaintiff over the defendant despite what their logic – and the evidence – might tell them. Mr. Ball and Mr. Keenan instruct plaintiff's lawyers to "use the powerful Reptilian imperative to use devastating events as a springboard from which to create safety." The authors further instruct that "[e]very injury presents a hope for a safer future. Position the jurors as the cultivators of that hope."

3.    Any mention, comment, reference, testimony or argument regarding or relating to" "personal safety" or "community safety" should be precluded because they are akin to Golden Rule arguments which are universally condemned and prohibited. "Personal safety" and "community safety" arguments should also be precluded because they violate both the Missouri and Federal jury instructions and undermine Defendants' Due Process right to an impartial jury and fair trial. Finally, "personal safety" and "community safety" evidence should be precluded pursuant to Federal Rule of Evidence 401 and 403 because it is irrelevant and its probative value

is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury.

4.     Golden rule arguments encourage the jury to depart from their role of impartiality and step into the shoes of a litigant. *See Lovett ex rel. Lovett v. Union Pac. R. Co*., 201 F.3d 1074, 1083 (8th Cir. 2000). Such an argument is universally condemned because it encourages the jury to "depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Id*. "Reptile" arguments are poorly veiled attempts at the very type of golden rule arguments that have been so universally condemned. The arguments seek to have jurors decide a case, not on the evidence presented at trial as instructed, but rather on the potential harms and losses that could have occurred within the community.

5.     Here, Defendants anticipate Plaintiff will utilize these tactics and specifically ask the jurors to put themselves in the shoes of the Plaintiff. However, allowing these overly broad and fear-mongering type questions ask the jurors to base their verdict not on the evidence, but on the fear that they or other members of their family, their child, their parent, their grandparent, their spouse, could be injured.

6.     To allow Plaintiff's counsel to prey on the fears of the jury in a blatant attempt to inflate the damages awarded also seeks to deny Defendants their constitutional right to an impartial jury. As the United States Supreme Court has held, the right to an impartial jury also encompasses the right to take reasonable steps designed to insure that the jury is impartial. *Davis v. Florida*, 473 U.S. 913, 914, 105 S. Ct. 3540, 3541, 87 L. Ed. 2d 663 (1985). To allow Plaintiff to make these "reptile" arguments would be to violate this constitutional right as general fear invoking arguments urge a jury to award damages for *potential* harm. However, a defendant is not liable for potential harm to those who are strangers to the litigation but rather only for the alleged damages caused to

the plaintiff. Plaintiff's counsel's attempts at "reptile" argument go beyond the scope of alleged damages suffered by Plaintiff and urges for the recovery of potential damages, violating Defendants' due process right to an impartial jury and a fair trial.

7.    Finally, these questions do little to prove or disprove any fact at issue and are largely indecipherable. The questions are nothing more than an inappropriate attempt to "back door" impermissible testimony in the hopes of creating an overly simplified and generalized version of the applicable standard of care. Moreover, the questions are entirely disconnected from the factual circumstances of the instant case and in no way accurately represent Missouri law or the proper standard of care owed. As such, "reptile" tactics are generalized, overly simplistic, vague, ambiguous, overbroad, and misleading. They lack predicate, misstate the law regarding the standard of negligence, invade the province of the jury, and are irrelevant, argumentative, and intentionally prejudicial. *See Wahlstrom v. LAZ Parking Ltd., LLC*, No. SUCV20101022, 2016 WL 3919503, at *12 (Mass. Super. May 19, 2016) (granting a new trial due to the prejudicial effect following Plaintiff's counsel's usage of reptilian arguments throughout trial).

8.    In the end, these "reptile" tactics blatantly appeal to the jury to abandon its duty to render a verdict predicated on the evidence and the law of the case as instructed and, instead, let their judgment be influenced by the misguided attempts to instill fear and passion for the safety of themselves, children, parents, grandparents, and spouses in violation of Defendants' due process rights. "Reptile" arguments also make the very golden rule arguments universally condemned by the courts and, therefore, Plaintiff should be barred from offering any "reptile" evidence or making any argument including those which reference "personal safety" or "community safety."

MOTION IS:            GRANTED _____            DENIED _____

<u>**Defendants' Motion in Limine No. 2**</u>**: Requests for Specific Dollar Amounts**

1.      It is anticipated that Plaintiff's counsel will in *voir dire* and/or during the course of the trial, suggest that the jury award a specific dollar amount to Plaintiff for his alleged damages.

2.      Plaintiff served his Disclosures Pursuant to Rule 26(a)(1) on June 28, 2021.

3.      Rule 26(a)(1)(A)(iii), required Plaintiff to provide

a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

4.      Plaintiff provided the following information in his Disclosures regarding the damages he is seeking:

- Expenses for medical diagnosis, treatment and rehabilitation, past and future, including medical rescue and transport;
- Loss of income and ability to earn income, past and future;
- Damage to vehicle, trailer and contents of trailer, including towing and storage charges incurred;
- Pain, suffering and discomfort, including loss of use of various body parts.

5.      Plaintiff further stated that he was "preparing a computation of [his] damages as noted above which will be supplemented later."

6.      To date, Plaintiff has failed to supplement his Disclosures or otherwise provide any computation of his damages as required by the Rule.

7.      Pursuant to Rule 36(c)(1), if a party fails to provide information as required by Rule 26(a) the party is not allowed to use that information at trial.

8.      As such, by operation of Rule 36, Plaintiff's failure to provide a computation of his economic damages (past and future medical expenses, past and future loss of income and ability

to earn income, and damage to his vehicle, trailer and contents of trailer) prohibits him from presenting evidence regarding the dollar amounts of such damages at trial.

9.      Further, "while it is true that the ultimate amount of non-economic damages, if any, to be awarded to [Plaintiff] will be determined by the jury . . . that does not relieve the [Plaintiff] from disclosing any specific evidence they intend to utilize at trial in support of their request for [non-economic damages] or from disclosing any dollar range they intend to request from the jury." *McCrary v. Country Mut. Ins. Co.*, No. 13-CV-507-JED-PJC, 2014 U.S. Dist. LEXIS 64254, at *9 (N.D. Okla. May 9, 2014).

10.      Plaintiff's failure to make any such disclosures with regard to his claimed non-economic damages (pain, suffering, discomfort, loss of use of body parts), should also preclude Plaintiff from requesting a specific dollar amount for these non-economic damages at trial. *See Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267 F.R.D. 257, 282 (D. Minn. 2007) ("to the extent that plaintiffs do not intend to suggest a specific amount to the jury for emotional distress damages, this Court will not require them to disclose a computation of these damages . . . If plaintiffs do not provide this information . . . they will not be allowed to suggest a specific amount to the jury for emotional distress damages.").

MOTION IS:            GRANTED _____            DENIED _____

**Defendants' Motion in Limine No. 3:  Termination of Mr. Wescott**

1.      Defendants move for an Order instructing all parties and their counsel to abstain from and precluding them from using any pleading, testimony, remarks, questions, arguments, opening statements or evidence which in any way reference Defendant Wescott's termination or the reasons for his termination following the accident.

2.    Federal Rule of Evidence 407 provides that, when measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction. Moreover, even though there is an exception to this rule when the subsequent remedial measure is offered to show the feasibility of the measure prior to the accident at issue, advisory committee notes to Rule 407 expressly recognize that termination of an employee can be a "remedial measure" provided the accident at issue was a basis for the termination.

3.    The justification for Rule 407 is twofold. First, as an admission of fault, the probative value of subsequent remedial measures is limited. Second, exclusion is important to foster "a social policy of encouraging people to take ... steps in furtherance of added safety." *Hull v. Chevron U.S.A., Inc.*, 812 F.2d 584, 587 (10th Cir. 1987), citing Fed. R. Evid. 407 Advisory Committee's Note. Pursuant to Rule 407, Courts have excluded "evidence that an employer subsequently discharged an employee accused of causing a plaintiff's injury." *Nolan v. Memphis City Schools,* 589 F.3d 257, 274 (6th Cir. 2009); *Jumper v. Yellow Corp.,* 176 F.R.D. 282, 285 (N.D. Ill. 1997) ("Defendants' act of firing [its driver] is a subsequent remedial measure" and is therefore inadmissible); *Wanke v. Lynn's Transp. Co.,* 836 F.Supp. 587, 595 (N.D. Ind. 1993).

MOTION IS:          GRANTED _____          DENIED _____

**Defendants' Motion in Limine No. 4**:  **Heritage Transport's Incident Investigation and Preventability Determination.**

1.    Defendants seek to bar Plaintiff from in any way referencing any preventability determination as a result of the alleged accident and from arguing, inferring or suggesting that Heritage did not comply with any of its internal policies, given the different and lower level of scrutiny applied during these internal incident investigations and preventability determinations.

Introducing or referring to such policies and procedures are not reliable standards to be utilized by the jury in order to assess liability, but rather will only confuse the jury regarding the proper standard of care. *See, Thompson v. City of Chicago*, 472 F.3d 444, 446 (7th Cir. 2006); *Whren v. United States*, 517 U.S. 806, 815, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see also* F.R.E. 401 and 403.

2.    In *Villalba v. Consol. Freightways Corp. of Delaware,* Case No. 98 C 5347 (N.D. Ill. Aug 10, 2000), the Court held that the standard for determining preventability and the standard for determining negligence were not the same. S*ee also Tyson v. Old Dominion Freight Line, Inc.*, 608 S.E.2d 266 (2004) (upholding a trial court's ruling to prohibit evidence concerning the accident review committee and preventability determination because the motor carrier's definition of preventable was different from the standard of liability).

3.    Moreover, Federal Rule of Evidence 407 bars the use of subsequent remedial measures to prove negligence. The public policy behind the subsequent remedial measures rule is that defendants should not be discouraged from undertaking safety measures and should have an incentive to act without fear that such actions will later be used against them in a lawsuit. *See also Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) (finding a city's disciplinary proceeding constituted a remedial measure and was inadmissible to show police officer used excessive force).

4.    The investigation into an accident is a necessary step toward remedial action. To protect the latter, but not the former undermines the policy served by the rule. Accordingly, referring to Defendant's policies and procedures as to the reporting and investigation of incidents, including any preventability determinations, will confuse and mislead the jury and result in a mini-trial regarding the different standards and the significance of a preventability finding, diverting

attention away from the real issue of negligence. Further, because such policies and determinations would be evidence of subsequent remedial measures, Plaintiff should be barred from referencing or otherwise providing evidence as to any such policies or determinations. FED. R. EVID. 401, 403 and 407.

MOTION IS:                GRANTED _____                DENIED _____

**Defendants' Motion in Limine No. 5:  Insurance**

Federal Rule of Evidence 411 provides that "evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully…."  Fed. R. Evid. 411; *See also Charter v. Chleborad*, 551 F.2d 246, 248 (8th Cir. 1977) (It is well established that the existence of a liability insurance policy is not admissible to show one's negligence or other wrongful conduct). Moreover, under Missouri law, it has long been generally considered reversible error in personal injury actions to show, directly or indirectly, that the defendant carries liability insurance.  *Collier v. Steinbach*, 597 S.W.3d 317, 320 (Mo. App. E.D. 2019). Consequently, any such evidence would be irrelevant and highly prejudicial. FED. R. EVID. 403 and 411.

MOTION IS:                GRANTED _____                DENIED _____

**Defendants' Motion in Limine No. 6:  Any reference, mention or argument as to when and/or why any party hired and/or consulted with an attorney, including the timing of an attorney's investigation.**

Such evidence would seek to show the early hiring of an attorney to then suggest that it is improper. Inquiry as to when any party has hired an attorney is merely an improper attempt to prejudice the jury against the party by somehow arguing that it was inappropriate for the party to seek legal counsel and guidance or to investigate the alleged accident. Also, when and why a party hired and consulted with an attorney or when the attorney coordinated an investigation of the

alleged accident has no tendency to prove or disprove any fact at issue in this matter such that it is entirely irrelevant, and therefore, should be barred. FED. R. EVID. 401 and 403.

MOTION IS:            GRANTED _____            DENIED _____

**Defendants' Motion in Limine No. 7: Any reference, mention or argument as to claims and legal theories not set forth in the pleadings.**

Federal Rule of Civil Procedure 8(a) mandates that Plaintiff make "a short and plain statement of the claim showing that the pleader is entitled to relief." This requirement "is designed to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir. 1991). Accordingly, any evidence related to theories not pled would be irrelevant to the issues before the Court and would serve no purpose. Moreover, to allow Plaintiff to present evidence on theories not included in the pleadings would be highly prejudicial to Defendants as Defendants have not had the opportunity to prepare a defense on theories not asserted and/or no longer in the pleadings. FED. R. EVID. 401 and 403.

MOTION IS:            GRANTED _____            DENIED _____

**Defendants' Motion in Limine No. 8: Any reference, mention or argument as to Berney Wescott's past driving history/tickets/citations.**

Any past driving history, tickets or citations are not relevant to any cause of action still pending in this lawsuit. As such, only evidence directly related to the alleged accident at issue is relevant. Any evidence related to any derivative liability theory would be irrelevant to the issues before the Court, would serve no legitimate purpose, would confuse the issues, mislead the jury, unfairly prejudice Defendants, and would be a waste of time. Therefore, such evidence should be barred. FED. R. EVID. 401, 403 and 609(a).

MOTION IS:            GRANTED _____            DENIED _____

**<u>Defendants' Motion in Limine No. 9</u>: Corporate Representative(s) of Defendant Heritage Transport, LLC**

1.      Defendants move this Court for an order barring Plaintiff from calling any corporate representative of Defendant Heritage Transport, LLC.

2.      Here, Plaintiff has only sued Heritage Transport, LLC under a theory of vicarious liability/*respondeat superior*, and have not included any derivative negligence claims (such as negligent hiring, supervision and/or retention) against Heritage Transport.

3.      Further, Plaintiff has neither requested nor taken a corporate representative deposition of Defendant Heritage Transport.

4.      Had Plaintiff sought the deposition of Defendant's corporate representative(s), Plaintiff would have been required to provide a specific list of proposed deposition topics under Rule 30(b)(6). This requirement would have afforded Defendant with notice of the topics to be discussed, an opportunity to object to the topics and the opportunity to ensure the correct person with the pertinent knowledge is designated.

5.      Here, to allow Plaintiff to call any person to speak on behalf of Heritage Transport, LLC at trial would deprive Defendant of all the aforementioned opportunities.

6.      Consequently, Defendants asks that this Court bar Plaintiff from attempting to call any individual as a representative of Defendant Heritage Transport, LLC or, in the alternative, to require Plaintiff make an offer of proof as to what evidence he would elicit from any such individual so as to demonstrate its relevancy to the matters at issue before Plaintiff be allowed to call the individual before the jury.

          MOTION IS:          GRANTED _____          DENIED _____

**Defendants' Motion in Limine No. 10**: Any reference, mention or argument as to the net worth, valuations, earnings, profits, wealth, size, assets or any other index of the economical or financial condition of Defendant Heritage Transport, LLC or any related companies.

Heritage Transport, LLC's financial condition is relevant and admissible in actions seeking punitive damages. *State ex rel. Ford v. Adolf*, 724 S.W.2d 612, 614 (Mo. App. E.D. 1986). As Plaintiff has not alleged punitive damages against Defendants, only compensatory damages are at issue. As such, the financial condition or size of Heritage Transport, LLC is entirely irrelevant and only serves to prejudice the Defendants by implying to the jury that Heritage Transport, LLC is a large company in a blatant attempt to inflate the damages. Because such evidence and any evidence as to the size and economic or financial condition of Heritage Transport, LLC and any related companies is entirely irrelevant, confusing and prejudicial, it should be barred. FED. R. EVID. 401 and 403.

MOTION IS:          GRANTED _____          DENIED _____

**Defendants' Motion in Limine No. 11**: Any reference, mention or argument as to the economic or financial condition of the trucking industry.

The economic or financial condition of the trucking industry is not relevant to any of the facts at issue in this case. Any testimony or argument regarding such would be entirely irrelevant, confusing, and a waste of time and, as a result, should also be barred. FED. R. EVID. 401 and 403.

MOTION IS:          GRANTED _____          DENIED _____

**Defendants' Motion in Limine No. 12**: Any reference, mention or argument as to any of Heritage Transport, LLC's rules, policies and/or procedures.

Defendants seek to exclude evidence related to any of Heritage Transport's rules, policies and/or procedures as such is not relevant to Plaintiff's cause of action and should therefore be excluded. Missouri law, not any rule or policy set by Heritage Transport, sets the standard for negligence. A violation of Heritage Transport, LLC's internal rules, policies or procedures does

not constitute negligence, and such rules, policies and/or procedures are irrelevant to the standard for liability. S*ee Pierce v. Platte-Clay Elec. Co-Op, Inc.,* 769 S.W.2d 769, 772 (Mo. 1989) ("The duty of care is an objective standard determined by what an ordinary careful and prudent person would have done under the same or similar circumstances. Industry customs or standards do not establish a legal standard of care."); *Rodrick v. Walmart Stores East, LP*, 07-0768-CV-W-REL, 2010 WL 11509266, at *1 (W.D. Mo. May 20, 2010) (same). Such evidence would serve no legitimate purpose, would confuse the issues, mislead the jury, unfairly prejudice Defendants, and would be a waste of time. Therefore, such evidence should be barred. FED. R. EVID. 401 and 403. *See also* the discussion in Defendants' MIL No. 4, which is incorporated herein.

MOTION IS:         GRANTED _____         DENIED _____

**<u>Defendants' Motion in Limine No. 13</u>: Any reference, mention or argument as to DOT or FMCSR Rules.**

Defendants seek to exclude evidence related to any Department of Transportation ("DOT") or Federal Motor Carrier Safety Regulations ("FMCSR") rule, regulation, policy and/or procedure as such do not set forth the legal standard of care. Missouri law sets the standard for negligence, not any rule or policy set by DOT. A violation of a DOT rule, policy or procedure does not constitute negligence, and such rules, policies and/or procedures are irrelevant to the standard for liability. *See Pierce v. Platte-Clay Elec. Co-Op, Inc.,* 769 S.W.2d 769, 772 (Mo. 1989) ("The duty of care is an objective standard determined by what an ordinary careful and prudent person would have done under the same or similar circumstances. Industry customs or standards do not establish a legal standard of care."); *Rodrick v. Walmart Stores East, LP*, 07-0768-CV-W-REL, 2010 WL 11509266, at *1 (W.D. Mo. May 20, 2010) (same).

MOTION IS:         GRANTED _____         DENIED _____

**Defendants' Motion in Limine No. 14**: Any reference, mention, argument or presentation of individuals not disclosed in Plaintiff's discovery responses and/or Rule 26 disclosures.

Federal Rule of Civil Procedure 26 specifically requires the disclosure of the names of all individuals the disclosing party "may use to support [his] claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). The express purpose of this rule is to remove surprise from trial preparation so the parties can obtain necessary evidence. *See e.g. U.S. ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002); *Equal Employment Opportunity Comm'n v. Carter Carburetor, Div. of ACF Indus., Inc.*, 76 F.R.D. 143, 144 (E.D. Mo. 1977); *Wood v. Todd Shipyards*, 45 F.R.D. 363, 364 (S.D. Tex. 1968). Further, Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party <u>fails to</u> provide information or <u>identify a witness</u> as required by Rule 26(a) or (e), the party is <u>not allowed to use that</u> information or <u>witness</u> to supply evidence … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). Thus, to allow Plaintiff to call an individual not previously disclosed would be to allow the very kind of surprise the rules were designed to prevent and, therefore, Plaintiff should be limited to calling only those individuals disclosed in both the Rule 26 initial and pretrial disclosures. FED. R. CIV. P. 26(a)(1), 37(c)(1).

MOTION IS:          GRANTED _____          DENIED _____

**Defendants' Motion No. 15**: Any reference, mention, argument or presentation of documents, electronically stored information and tangible things not disclosed in Plaintiff's discovery responses and/or Rule 26 disclosures.

Federal Rule of Civil Procedure 26 specifically requires the disclosure of all "documents, electronically stored information and tangible things" that the disclosing party has and "may use to support [his] claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). The express purpose of this rule is to remove surprise from trial preparation so the parties can obtain necessary evidence. *See e.g.*

*U.S. ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002); *Equal Employment Opportunity Comm'n v. Carter Carburetor, Div. of ACF Indus., Inc.*, 76 F.R.D. 143, 144 (E.D. Mo. 1977); *Wood v. Todd Shipyards*, 45 F.R.D. 363, 364 (S.D. Tex. 1968). Further, Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party <u>fails to</u> <u>provide information</u> or identify a witness as required by Rule 26(a) or (e), the party is <u>not allowed to use that information</u> or witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). Thus, to allow Plaintiff to use documents, electronically stored information and tangible things not previously disclosed would be to allow the very kind of surprise the rules were designed to prevent and, therefore, Plaintiff should be limited to using only those documents, electronically stored information, and tangible things disclosed in both the Rule 26 initial and pretrial disclosures. FED. R. CIV. P. 26(a)(1) and 37(c)(1).

MOTION IS:          GRANTED _____          DENIED _____

**<u>Defendants' Motion in Limine No. 16</u>: Any reference, mention, argument or presentation of medical opinions from lay witnesses.**

1.      Unlike an expert witness, who may give his or her opinion about a matter within the witness' expertise (Fed. R. Evid. 703), a lay witness may testify only about matters within his or her personal knowledge. *Kemp v. Balboa*, 23 F.3d 211, 213 (8th Cir. 1994). Federal Rule of Evidence 602 provides that a witness may not testify to a matter unless "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Rule 602 prohibits a lay witness from testifying about matters that are not within the personal knowledge of the witness. *See Kemp*, 23 F.3d at 213, citing *United States v. Lyon,* 567 F.2d 777, 783–84 (8th Cir. 1977). Rule 602 "excludes testimony concerning matters the witness did not observe or had no opportunity to observe." *Id. See also* Fed. R. Evid. 602 advisory committee notes; and McCormick on Evidence, § 69 (4th ed.1992). Consequently, Plaintiff and all other witnesses not

identified as expert witnesses should be prohibited from expressing medical opinions. FED. R. EVID. 602. This includes complaints of subjective symptoms such as bodily pain, as it is well recognized that such claims are too indefinite for the Court to determine whether such alleged injuries were caused by a defendant's negligence absent expert testimony establishing causation. *See Pihsiau Hsu v. Mound City Yellow Cab Co.*, 624 S.W.2d 61, 63 (Mo. App. E.D. 1981).

MOTION IS:          GRANTED _____          DENIED _____

**Defendants' Motion in Limine No. 17: Any reference, mention, argument or presentation of medical opinions from any witness or alternatively any such evidence from any of Plaintiff's treating physicians that goes beyond their treatment and diagnosis of Plaintiff including the exclusion of any testimony offered by Plaintiff from Dr. Hoofnagle.**

1.      Plaintiff has not disclosed any medical experts for trial in this matter. Nonetheless, Defendants anticipate Plaintiff will attempt to introduce testimony from Plaintiff's treating physicians at trial.

2.      Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of witnesses that may be used to present expert testimony at trial. Fed. R. Civ. P. 26(a)(2)(A); *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018). The nature and extent of the required disclosure turns on whether or not the expert witness is "retained or specially employed to provide expert testimony in the case." *Vanderberg*, 906 F.3d at 702. Rule 26(a)(2)(B) pertains to "witnesses who must provide a written report" and Rule 26(a)(2)(C) pertains to witnesses who do not have to provide a written report.

3.      Rule 26(a)(2)(B) provides, in part:

(B) *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report … if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony …

Fed. R. Civ. P. 26(a)(2)(B).

4.    Rule 26(a)(2)(C) provides:

(C) *Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
>
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26 (a)(2)(C).

5.    "If a party fails to provide information ... as required by Rule 26(a)," then the party may not use that information at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). *See also Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004) (Under Rule 37(c)(1), "[t]he exclusion of non-disclosed evidence is automatic and mandatory ... unless non-disclosure was justified or harmless.")  "A district court 'has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case' when a party fails to provide information ... in compliance with Rule 26(a)." *Zick v. Paccar, Inc*., 47 F.4th 672 (8th Cir. 2022).

6.    In *Rangel v. Anderson*, 202 F. Supp. 3d 1361, 1368 (S.D. Ga. 2016), the Court noted that treating physicians often fall within Rule 26(a)(2)(C) for witnesses who will testify as fact witnesses, as well as offer expert opinions. The Court recognized that while such witnesses need not provide the report required by Rule 26(a)(2)(B), they are still required to disclose the subject(s) of their expert testimony, as well as a summary of the facts and opinions on which they are expected to testify. *Id*. The following excerpt explains the rationale and impact of Rule 26(a)(2)(C) as to treating physicians:

**[T]he disclosures that must be made for a treating physician depend on the nature of the testimony he or she will give**. Unless the treating physician is going to be limited to testifying about facts in a lay person capacity, the physician must be disclosed as an expert and must provide either the summary disclosures or an expert report. **Whether the treating physician must file a written report or is subject only to summary disclosures depends on the role of the expert**. If the treating physician's expert opinions stay within the scope of treatment and diagnosis, then the physician would not be considered "retained" to provide expert testimony and only summary disclosures would be needed. But **if a treating physician is going to offer opinions formed outside the course of treatment and diagnosis, then as to those further opinions the physician is being used in a "retained expert" role and the Rule 26(a)(2)(B)'s report requirement will apply to the extent of that further testimony.** It is not sufficient for the summary disclosures to mention that the treating physician is going to offer these additional expert opinions.

The types of disclosures made will then determine the scope of testimony actually allowed. Treating physicians disclosed only as lay witnesses may testify only to lay facts. **Treating physicians for whom summary disclosures are provided may opine on matters relating to treatment and diagnosis.** If the treating physician files an expert report, then the treating physician may testify as a retained expert to matters that go beyond treatment and diagnosis.

*Rangel*, 202 F. Supp. 3d at 1365, citing Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 26. *See also, In re Denture Cream Prods. Liab. Litig*., No. 09–2051–MD, 2012 WL 5199597, *4 (S.D. Fla. Oct. 22, 2012) (holding that "label of 'treating physician' is irrelevant; instead, the determination turns on the substance of the physician's testimony" and concluding that, because the witnesses were testifying as to causation, their "title 'treating physicians' does not carry the day," and they were required to provide full Subsection B reports). "It is the substance of the expert's testimony, not the status of the expert, which will dictate whether a Rule 26(a)(2)(B) report will be required." *Masters v. Safeco Ins. Co. of Am.*, No. 20-CV-00631-PAB-NRN, 2021 WL 4317112, at *3 (D. Colo. Sept. 23, 2021). If the physician opines as to any issue beyond the physician's personal observation or treatment of the patient, or reviews the records of another health care provider in order to formulate an opinion outside of treatment, the physician

18

will be required to file a written report under Rule 26(a)(2)(B). *Vanderlaan v. Ameriprise Auto & Home Ins.*, No. 20-CV-00191-PAB-STV, 2021 WL 4441518, at *2 (D. Colo. Sept. 28, 2021).

7.      As such, any testimony from Plaintiff's treating physicians that goes beyond their treatment and diagnosis of Plaintiff should be excluded. FED. R. CIV. P. 26(a)(2).

8.      As previously noted, in this case Plaintiff never disclosed any medical experts and in fact specifically stated that "no expert medical witnesses shall be designated for trial herein." [Doc. 98].

9.      Based on Plaintiff's disclosures/non-disclosures/tactics, Defendants had no need to retain or endorse any competing medical experts.

10.     Accordingly, Plaintiff should be precluded from presenting any medical opinions or testimony from any witnesses.

11.     Plaintiff has now noticed up the deposition for one of Plaintiff's treating physicians, Dr. Mark Hoofnagel for Monday, May 6, 2024 or long after the discovery cut off imposed by the Court.

12.     Plaintiff has never provided a report or summary disclosure for Dr. Hoofnagle or any of Plaintiff's medical providers.

13.     Defendants object to Plaintiff's taking of Dr. Hoofnagel's deposition and will make their objections on the record but of course do not know at this time what testimony Plaintiff's attorneys intend to elicit from Dr. Hoofnagel since no proper disclosure or report was ever prepared for/received from him.

14.     Defendants move this Court to preclude Plaintiff from presenting any of Dr. Hoofnagel's testimony at trial in its entirety based on Plaintiff's improper and untimely disclosure.

15.     Defendants previously moved for partial summary judgment as to any claims for any alleged injuries or damages Plaintiff may claim that are beyond the realm of the sudden onset doctrine including future medical expenses, pain and suffering, discomfort, loss of use of various body parts, impairment of general health, strength and vitality, and psychological injuries, given Plaintiff's failure to identify any medical experts to establish causation for any such injuries. *See, Lidge v. Sears, Roebuck & Co.,* 318 F.Supp.2d 830 (W.D. Mo. 2004). [Doc. 96]

16.     While the Court denied Defendants' Motion for Partial Summary Judgment it acknowledged that it was not aware of the precise nature of any alleged permanent injuries, general health, strength, and vitality, psychological injuries, and future medical expenses Plaintiff may be claiming since Plaintiff had yet to make such clear. [Doc.122].

17.     Accordingly, Defendants move the Court to preclude Plaintiff from presenting any evidence of any such injuries at trial or at least to make a showing prior to attempting to present any such evidence of exactly what the nature and extent of the injuries he is claiming are including but not limited to any subjective claims for pain and suffering since  it is well recognized that such claims are too indefinite for the Court to determine whether such alleged injuries were caused by a defendant's negligence absent expert testimony establishing causation.  *See Pihsiau Hsu v. Mound City Yellow Cab Co.*, 624 S.W.2d 61, 63 (Mo. App. E.D. 1981).

MOTION IS:              GRANTED _____              DENIED _____

**<u>Defendants' Motion in Limine No. 18</u>: Plaintiff should be precluded from calling any expert witnesses to testify that have not been properly endorsed, including, but not limited to, Dr. Hoofnagle.**

1.     Defendant moves this Court for an Order barring Plaintiff from calling his treating physicians or any other "experts" to elicit any opinion testimony in this matter.

2.      Pursuant to the Amended Case Management Order entered by the Court [Doc. 83] Plaintiff was to disclose all expert medical witnesses and provide the reports required by Rule 26(a)(2), Fed. R. Civ. P. no later than February 10, 2023 and make such expert witnesses available for depositions and have depositions completed no later than March 15, 2023.

3.      On August 1, 2022 Plaintiff served his first Rule 26 Expert Disclosure wherein he identified William Hampton and W.E. Hampton & Associates, Inc. as "retained experts/consultants, other than medical experts" *See* [Doc. 98].

4.      Plaintiff later served a second Rule 26 Expert Disclosure on March 30, 2023 wherein he stated that "no expert medical witnesses shall be designated for trial herein." *See,* [Doc. 98].

5.      Based on Plaintiff's decision to not endorse any medical experts in this matter Defendants saw no need to retain any medical experts for the defense or to ask for an IME of Plaintiff.

6.      On or about April 16, 2024, or less than 30 days prior to the trial setting of May 13, 2024, Plaintiff's counsel emailed Defendants' counsel to advise that they wanted to depose Dr. Mark Hoofnagle who was one of Plaintiff's physicians at Barnes Jewish Hospital.

7.      Plaintiff's attorneys have set Dr. Hoofnagle's deposition for May 6, 2024 or one week before the start of the trial of this matter despite the fact that Plaintiff has never properly disclosed Dr. Hoofnagle as an expert witness, retained or otherwise. Assuming Dr. Hoofnagle is a treating physician and would be appearing in a non-retained expert capacity, Plaintiff has still failed to provide the subject matter upon which the witness is expected to testify or a summary of his facts and opinions.

8.      Federal Rule of Civil Procedure 37 addresses the failure to properly disclose a witness.  FED. R. CIV. P. 37(c).  In pertinent part, it provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  […].

Fed. R. Civ. P. 37(c).

9.      Accordingly, based upon Plaintiff's failure to properly disclose Dr. Hoofnagle, or any other medical expert witness at any time, Plaintiff should be barred from presenting any testimony from Dr. Hoofnagle or any other medical expert witness as the failure to disclose is neither justified nor harmless.  *Drahos v. Budget Rent a Car System, Inc.*, 4:19-cv-921-SNLJ, 2021 WL 228931 (E.D. Mo. Jan. 22, 2021) (finding Plaintiff's disclosure stating the witness was expected to testify as to the medical condition and treatment of the plaintiff as a result of the incident along with the facts and opinions documented in her medical records was insufficient, but harmless because Defendant had previously retained a competing expert as to causation).

10.     Here, it is not merely that Plaintiff made an insufficient disclosure, but rather that Plaintiff has effectively made no disclosure beyond providing Dr. Hoofnagle's name.

11.     Plaintiff should be precluded from presenting any evidence as to his alleged injuries or damages beyond what may be admissible under the sudden onset doctrine. Under the sudden onset doctrine, a causal connection may be inferred if the injury develops coincidentally with the negligent act, such as broken bones or obvious wound. *See, Wright v. Armijo,* 668 S.W.3d 261 (Mo. Ct. App. 2023) "However, when the injury is a 'sophisticated' one, i.e. requiring surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within the realm of lay understanding and must be established through expert testimony." *Turner v. Iowa Fire Equipment Co.,* 229 F.3d 1202, 1210 (8th Cir. 2000).

12.     While Plaintiff may be able to present evidence of some of his alleged injuries under the sudden onset doctrine, the majority of his injuries are complex and required surgical intervention and as such are beyond the realm of lay understanding.

13.     In short, Plaintiff has not properly identified any medical expert witnesses to establish causation and should not benefit by deposing Dr. Hoofnagle on the eve of trial after Defendants are precluded from retaining and identifying any medical experts and as such Plaintiff should be precluded from attempting to adduce any medical expert testimony in this case, which means Plaintiff has no expert testimony regarding causation.

MOTION IS:              GRANTED _____              DENIED _____

**Defendants' Motion in Limine No. 19**: **Any reference, mention, argument or presentation of any testimony regarding Plaintiff's bladder cancer.**

1.     Plaintiff was diagnosed with bladder cancer in May of 2017 or before the September 14, 2020 accident that is the subject of this case.

2.     Defendants believe that Plaintiff may still be treating for his bladder cancer but the bladder cancer clearly was not caused by the subject accident and there is no medical evidence that the subject accident had any effect on Plaintiff's bladder cancer.

3.     As such any reference to Plaintiff's bladder cancer would be highly prejudicial to Defendants, create undue sympathy, is lacking in probative value and is improper.

MOTION IS:              GRANTED _____              DENIED _____

**Defendants' Motion in Limine No. 20**: **Any reference, mention, argument or presentation of a purported animation/re-creation of the subject accident by DK Global, Inc.**

1.     It is anticipated that Plaintiff may attempt to use a purported animation/re-creation of the subject accident that was apparently created by DK Global, Inc.

2.      Indeed, in his Pre-Trial Exhibit List Plaintiff identifies as Exhibit 313 an "Animation" and provided a copy of such. [Doc. 134].

3.      Plaintiff's liability expert, William Hampton, did not reference the DK Global animation in his Rule 26 Report or identify it as the basis for any opinions he provided in his Report but did identify the animation in his list of "Material Reviewed".

4.      Plaintiff never identified or disclosed DK Global as a retained expert witness or other witness to this matter and never made a representative of DK Global available for deposition as required by Rule 26(a)(2).

5.      During his deposition, Plaintiff's liability expert, William Hampton, could offer no information as to what facts or evidence DK Global actually considered when preparing the animation. [Doc. 89].

6.      Mr. Hampton testified during his deposition that he provided basic information to DK Global which did not include his conclusions and that DK Global then prepared a draft animation. [Doc. 89]

7.      Mr. Hampton testified that he did not provide any information as to the speed of the vehicles and does not know where/how DK Global got information regarding vehicle speeds or other relevant information regarding the vehicles and does not know what all DK Global may have reviewed in order to make the "animation."  [Doc. 89].

8.      As such there is no adequate foundation for the DK Global animation and it is therefore unreliable and inadmissible and Mr. Hampton and/or any other witnesses should be precluded from referencing, mentioning, arguing about, or presenting the DK Global animation.

9.      The Court previously recognized that there could be issues with the DK Global animation but concluded that because Plaintiff had not announced whether the animation would

be used at trial Defendants' objections to the animation were premature but may be revisited if Plaintiff elected to use the animation as he has now indicated in his Pre-Trial Exhibit List. [Doc. 117].

MOTION IS:          GRANTED _____          DENIED _____

**WHEREFORE**, the Defendants request that this Court grant Defendants' Motion in Limine Nos. 1-20, and for any other and further relief as this Court deems just and appropriate under the circumstances.

 _/s/ Stephen L. Beimdiek_____
Stephen L. Beimdiek            #32745 (MO)
LASHLY & BAER, P.C.
714 Locust Street
St. Louis, MO  63101
314-621-2939/Tel.
314-621-6844 Fax
sbeim@lashlybaer.com

*Attorneys for Defendants Berney P. Wescott and Heritage Transport, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed electronically with the Clerk of Court on May 3, 2024, to be served by operation of the Court's electronic filing system upon all counsel of record.

 _/s/ Stephen L. Beimdiek_____